# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

AFFIDAVIT

xxxxxxxxxxxxxxxxx Northeast
Washington, D.C.

APPLICATION AND

FOR SEARCH WARRANT

CASE NUMBER:

TO: <u>Special Agent Joshua C. Green,</u> being duly sworn depose and say:

I am a <u>Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives</u> and have reason to believe that

on the premises known as (name, description and or location)

xxxxxxxxxxxxxxxxx NORTHEAST, WASHINGTON, D.C. (This location is described as a two story red brick duplex residence located on the south side of xxxxxxxxxxxxxxxxxxxxx between xxxxxxxxxxxxxx and xxxxxxxxxxxxxxx, Washington, D.C. To the immediate right of the front porch door the residence is marked "xxx" in dark numbers on a white background. The front door is grey in color, the residence has white trim and an enclosed porch which is white in color with windows. Directly to the left and attached to the residence is another residence that is marked "xxx". The front yard has a grey colored chain link fence around it.)

in the District of Columbia, there is now concealed certain property, namely (describe the person or property)

       See Attachment A

Which are (give alleged grounds for search and seizure under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of alleged crime(s): In violation of Title 21, United States Code, Section 841(a)(1).

The facts to support the issuance of a Search Warrant are as follows:

See Affidavit which is incorporated herein for reference, Continued on the attached sheet and made a part hereof.

_____
Joshua C. Green, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives
(Affiant)

Sworn to before me, and subscribed in my presence
_____ at Washington, D.C.

**BUREAU OF ALCOHOL, TOBACCO, FIREARMS & EXPLOSIVES**
**WASHINGTON, D.C.**

**AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR:**

**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX**
**WASHINGTON, D.C.**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

AFFIDAVIT IN SUPPORT OF A SEARCH WARRANT FOR XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, WASHINGTON, D.C.  This location is described as a two story red brick duplex residence located on the south side of XXXXXXXXXXXXXXXXXXXXXXXX between XXXXXXXXXXXXXXXXX and XXXXXXXXXXXXXXXXX, Washington, D.C.  To the immediate right of the front porch door the residence is marked "XXX" in dark numbers on a white background.  The front door is grey in color, the residence has white trim and an enclosed porch which is white in color with windows.  Directly to the left and attached to the residence is another residence that is marked "XXX".  The front yard has a grey colored chain link fence around it.

Your affiant, Joshua C. Green, being duly sworn, does depose and state that:

1. Your affiant in this matter is Special Agent Joshua C. Green of the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF).  I am currently assigned to the Washington, D.C. area High Intensity Drug Trafficking Area (HIDTA) Task Force and I have been assigned to the HIDTA Task Force since becoming a Special Agent with the ATF in July of 2000.  Prior to becoming an ATF Special Agent, I was a Special Agent with the former Immigration and Naturalization Service for over five years, the last three of which were in the Washington, D.C. area.  Since becoming a Special Agent with the ATF, I have taken part in numerous narcotics and firearms related investigations involving armed drug traffickers, armed gangs, felons in possession of firearms and ammunition, firearms trafficking, and the use of firearms in furtherance of illegal drug trafficking.  In addition, I have attended training related to narcotics and firearms at the Federal Law Enforcement Training Center in Glynco, Georgia and have received additional criminal investigation training, particularly related to illegal drug trafficking, offered by HIDTA.

2. I have participated in the execution of over one hundred and fifty search warrants in the Washington, D.C. metropolitan area, which have resulted in the recovery of firearms and ammunition, illegal drugs and suspected drug packaging material, suspected drug paraphernalia, including, but not limited to, electronic digital scales, cooking equipment, various chemical additives associated with illegal drug production, and other items for drug usage. In addition, these warrants have also led to the recovery of items such as shell casings, magazines, holsters, gun cases and safes, photographs of individuals with narcotics and firearms, large amounts of U.S. currency, records and documents associated with drug trafficking, and documentary evidence indicative of ownership and/or control of a premises and/or vehicle.

3. During the course of your affiant's training and professional experience in the area of law enforcement, I have become familiar with narcotics and illegal drug-related crime in the Washington, D.C. metropolitan area and with the methods used to manufacture, package and to distribute controlled substances, including cocaine and crack cocaine. This knowledge has in part been the result of being present during dozens of interviews of defendants, witnesses, confidential informants, police officers and other law enforcement officers. In addition to my participation in numerous search warrants as described above, I have also participated in the arrest of dozens of individuals in the Washington, D.C. metropolitan area for narcotics-related offenses. Based on this training and experience, I have learned that:

    A) It is common for narcotic traffickers to secrete narcotics in secure locations within residences, vehicles, businesses and other locations over which they maintain dominion and control, for ready access, and to conceal these items from law enforcement authorities. In addition, items and paraphernalia used to process or package illegal narcotics are often stored along with such secreted narcotics.

    B) It is common for individuals who sell narcotics to maintain in their residence large amounts of U.S. currency in order to maintain and finance their ongoing narcotic business. Other contraband proceeds of narcotics sales, such as jewelry and other valuables, may be stored in the residence along with currency. Additionally, your affiant knows that these same individuals keep receipts, bank statements, money drafts, letters of credit, money orders and cashier checks, bank checks, currency counting machines and other items related to the obtaining, secreting, transfer, or concealment of assets in the form of U.S. currency and other financial instruments.

    C) It is common for records of narcotic transactions and papers relating to the accumulation and disposition of assets (such as, but not limited to, books, ledgers, bank books and statements, and notes or logs) derived from narcotic trafficking to be stored by narcotic distributors in residences and/or vehicles. In addition, it is common for papers and documents related to the ownership, occupancy and/or control of the premises/vehicles to be stored within the

       premises and/or vehicles.

   D) It is common for people who sell illegal drugs to maintain addresses, telephone books, electronic paging devices, cellular telephones and other papers reflecting names, addresses, and/or telephone numbers of associates and co-conspirators. These items are frequently kept at the same location as the controlled substances. In addition, drug traffickers have photographs or video tapes of themselves and their associates in the drug trade, as well as property derived from the distribution of narcotics, and such items are often kept in their residence.

   E) Participants in drug trafficking and other violent criminal activity often possess and maintain weapons and ammunition. Weapons are often stored in the subject's residences and/or vehicles for their protection and for the protection of their illegal narcotics and the assets generated from the sales of the illegal narcotics. Firearms are generally kept in secure locations to protect the items from theft and discovery by law enforcement authorities, thus reducing their exposure to criminal liability. In your affiant's experience, the recovery of weapons during the execution of search warrants is usually accompanied by the recovery of additional ammunition, magazines, bulletproof vests and documentary evidence indicative of ownership and possession of firearms.

4. As this affidavit is being prepared for the limited purpose of obtaining a search warrant for the premises noted, it is not intended to include each and every fact observed by your affiant, other law enforcement officers, or known to the government. This affidavit is submitted with only those facts necessary to support probable cause for this application.

## SUMMARY OF INVESTIGATION

5. Over the last four years members of the Washington, D.C. ATF-HIDTA Task Force have worked with a Confidential Informant, referred to in this affidavit as CI-1. CI-1 has participated in a number of controlled narcotics and firearms purchases and has provided reliable information regarding firearms, narcotics trafficking and other violent criminal activity to ATF and other law enforcement agencies. This information has led to the execution of numerous search warrants and the recovery of a large amount of illegal narcotics, firearms, ammunition, U.S. currency and other contraband. Further, the information that the CI has provided has been verified accurate by your affiant and other members of the ATF/HIDTA Task Force. No information provided by this source has ever been proven incorrect or misleading.

6. In January, 2007, your affiant received information from CI-1 regarding a subject known to the CI as "Herb". This subject is reportedly an illegal drug dealer who sells powder and crack cocaine in the Washington, D.C. metropolitan area. The CI believed that the subject lived in the 600 block of XXXXXXXXXXXXXXXXXXXXX, Washington, D.C. The CI saw "Herb" driving a vehicle bearing Maryland registration tag 5BLV61.

7. Your affiant consulted Department of Motor Vehicle (DMV) records and found that the vehicle with Maryland registration tag 5BLV61 was owned by Avis Incorporated and ultimately rented out by Budget Rent A Car, Inc. Your affiant met with representatives of Budget Rent A Car and learned that this vehicle had been rented by Herbert S. BASS of **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C**. Upon renting the vehicle, BASS provided a District of Columbia driver's license. DMV records indicate that BASS claims his home address on his driver's license as **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.**

8. Research was conducted by your affiant and it was determined that the aforementioned Herbert S. BASS has a criminal record. More specifically, NCIC records indicate that BASS was arrested in Prince George's County, Maryland in March, 1997, and ultimately charged with various counts to include Possession with Intent To Distribute a Controlled Dangerous Substance/Narcotics. These records indicate that BASS was convicted of this charge and sentenced to three years incarceration (all of which was suspended) and three years of probation. In addition, NCIC records show that BASS was arrested in May, 1997, in Washington, D.C. and charged with Possession of Marijuana. While this charge was later dismissed, at the time of this arrest BASS claimed to live at **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.**

9. Records were obtained from Budget Rent A Car related to BASS's history of renting vehicles. These records indicate that BASS has consistently rented vehicles from Budget Rent A Car since September, 2005. BASS would typically keep a rented vehicle for two weeks to a month and upon returning it would rent another vehicle at the same time. Since September, 2005, BASS has spent over $12,000.00 to rent vehicles from Budget Rent A Car. I have learned, based on my training and experience, that those involved in illegal criminal activity, such as drug dealing, will use rental cars in order to a) make it more difficult for law enforcement to identify the driver of the vehicle as it is not registered in the driver's name, b) distance themselves from any drugs or contraband found in the vehicle by law enforcement in that the vehicle does not belong to them, and c) lessen the likelihood of financial loss through seizure of the vehicle by law enforcement should illegal drugs or other contraband be found as they are not the owners of the vehicle. BASS has consistently reported to Budget Rent A Car that his address is **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.** In addition, records and information obtained from Budget Rent A Car show that upon his returning the vehicle described in Paragraph 7, BASS immediately rented another vehicle, this time

a grey Chevy bearing Maryland registration tag 4CLD43. This vehicle was subsequently returned on March 22, 2007, and BASS again immediately rented another vehicle, this time a silver Chevy bearing Maryland registration tag 6CNW85. BASS is the current named renter of this vehicle and is expected to keep it in his possession until the middle of June, 2007.

10. During February, March, April and May of 2007, your affiant conducted surveillance in the area of **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C**. and observed the grey Chevy, bearing MD tags 4CLD43 or the silver Chevy bearing Maryland registration tag 6CNW85 parked in front of or near **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C** on at least sixteen occasions. I have observed the silver Chevy bearing Maryland registration tag 6CNW85 parked in front of or near **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.** twice in the past week and as recently as May 21, 2007. In addition, on at least three occasions I have personally observed a subject matching a DMV photograph of BASS driving or sitting in these rental vehicles.

11. On Monday, February 12, 2007, your affiant went to XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C. in order to conduct surveillance and obtain discarded trash from the location. I had previously consulted the Washington, D.C. government website and determined that residential trash is collected in that neighborhood on Mondays. In an alley at the rear of the location, I found a trash can directly behind the residence out in the alley, off the curtilage and not behind any fence or enclosure. The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection. I obtained a number of trash bags from the trash can located directly behind the residence and removed these bags for closer inspection away from the immediate area. All of the bags contained household garbage and some contained mail matter addressed to **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.** One bag was found to contain items indicative of narcotics trafficking by Herbert BASS. More specifically, I found ziplock sandwich bags with white powder residue as well as a number of small blue, green and clear colored ziplock bags typical of those used to package illegal drugs. I field tested a portion of this white powder and received a positive reaction for cocaine. In addition, I located the top portion of dozens of clear sandwich bags which had been twisted and appeared cut. From my experience, these pieces of sandwich bag would be consistent with the removed tops from sandwich bags used to package drugs. It is not uncommon for drug dealers to put drugs in sandwich bags, twist and tie the top, and then cut off the twisted top. Your affiant also located various documents in the discarded trash, including pieces of mail matter addressed to Herbert BASS at **XXXXXXXXXXXXXXX, Washington, D.C**. and a letter from Budget Rent A Car addressed to BASS at the location. In addition, I found a receipt from Giant in Hyattsville, Maryland, indicating that two Pyrex measuring containers were

recently purchased.  Based on my training and experience, I know that narcotics traffickers often prepare or "cook" crack cocaine in Pyrex containers.  The mail matter and receipts located in the same discarded trash as the drug packaging material were dated from January and February, 2007.

12. On Monday, May 21, 2007, your affiant went to XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C. in order to again conduct surveillance and obtain discarded trash from the location.  Similar to prior occasions, I found a trash can out in an alley at the rear of the location and directly behind the residence, off the curtilage, and not behind any fence or enclosure.  The other residences in the area also had trash cans put out in the alley in preparation for the morning's refuse collection.  I obtained a number of trash bags from the trash can located directly behind the residence and removed these bags for closer inspection away from the immediate area.  All of the bags contained household garbage and one contained a letter addressed to **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.**  Much of the papers and/or mail matter, however, had been shredded.  One bag was found to contain items indicative of narcotics trafficking.  More specifically, this trash bag contained two clear sandwich bags with white powder residue and the tops of five small blue ziplock bags typical of those used to package illegal drugs.  I field tested the white residue from the sandwich bags and received a positive reaction for cocaine.  In addition, inside the trash bag I found the top portion of dozens of clear sandwich bags which had been twisted and appeared cut, similar to those found in the trash at the same location as described in Paragraph 11.  In addition to the drug packaging material and residue, the same garbage bag contained various documents, including two receipts.  One receipt indicated that a purchase was made at Filene's Basement in Washington, D.C. in which the purchaser paid $95.15 cash.  The second receipt from DSW Shoes in Maryland indicated that $342.02 in men's merchandise was purchased using cash.  The receipts located along with the drug packaging material were dated May, 2007.  In addition, found in this same bag were labels taken from men's clothing.  The clothing was sized 3X and size 38 Waist and 32 Length for a pair of jeans.  Another bag found in the trash had contained T-shirts sized 3X and a clothing bag for socks for shoe sizes 10 to 14.  Herbert BASS is described as 5 feet 11 inches in height and weighs approximately 215 pounds.  Clothes of that size would be consistent for a man of Herbert BASS's size.

13. In summary, based on the information contained herein, your affiant believes that Herbert BASS is utilizing **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.,** as a base to conduct and facilitate an illegal drug trafficking operation involving cocaine.  Furthermore, based on the aforementioned investigation, your affiant's training, personal observations and experience, your affiant has probable cause to believe that this residence contains evidence, instrumentalities and fruits of the offense of Distribution of Cocaine, in violation of Title 21, United States Code, Section 841(a)(1).  Your affiant believes that probable cause exists that within **XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.** there is presently concealed drug packaging material and paraphernalia, records, receipts, bank

books and statements, notes and ledgers, address books, contact telephone numbers and names, cellular phones and/or digital paging devices, documents related to the ownership, occupancy and/or control of the premises, illegal weapons, as well as U.S. Currency and/or other proceeds of narcotic sales. These items are listed more completely on a separate sheet included with this application and labeled "Attachment A". I therefore respectfully request a search warrant be issued for the premises, curtilage, and locked boxes within the premises and curtilage, of
**XXXXXXXXXXXXXXXXXXXXXXXXXXXXXX, Washington, D.C.,** authorizing the seizure of the aforementioned items and any additional contraband discovered within.

_____
Joshua C. Green
Special Agent
Bureau of Alcohol, Tobacco, Firearms & Explosives

Sworn to and subscribed before me this _____ day of May, 2007.

_____
United States Magistrate Judge
District of Columbia

## ATTACHMENT A

### List of Items to be Seized at Premises

1. Paraphernalia for packaging, cutting, weighing and distributing illegal drugs, including but not limited to, scales, baggies, and cutting agents.

2. Firearms, firearm magazines, firearm attachments, ammunition, firearm parts and holsters as well as documentation of the purchase, storage, possession, disposition, dominion and control of firearms, including paperwork and receipts.

3. United States currency, precious metals, jewelry and financial instruments.

4. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering, purchase and distribution of controlled substances.

5. Address and telephone books and papers reflecting names, address and telephone numbers.

6. Books, records, receipts, bank statements, and records, money drafts, letters of credit, money order and cashier's checks related to the obtaining, secreting, transfer, and concealment of assets and/or the expenditure of money.

7. Electronic equipment, such as mobile telephones, facsimile machines, telephone answering machines, telephone paging devices, currency counting machines, computers, and any information stored in memory or contained in any related hardware and software.

8. Photographs and/or video tapes, in particular, those photographs and/or video tapes of co-conspirators, assets, controlled substances, or of individuals with controlled substances and those that assist in identifying associates and conspirators.

9. Indicia of occupancy, residence, and ownership of the premises, including but not limited to, utility and telephone bills, mail matter, canceled envelopes, and keys.

10. Any locked or closed container(s) believed to contain any of the above listed evidence.